# Equitable Loan & Security Company v. Town of Edwardsville.

## *Motion to Vacate Levy of Execution.*

1. *Municipal Corporations; execution.*—Municipal corporations are created for public, governmental and political purposes, and all property, held by them in trust for carrying out such purposes, is exempt from seizure and sale under execution, but the private property of such corporations, that is, such as they own for profit, and charged with no public trusts or use, may be sold under execution against them.

[Equitable Loan & Security Company v. Town of Edwardsville.]

2.  *Same; charter.*—A power conferred upon a corporation, by an independent and original act, is a power conferred by its charter.

3.  *Same; police power; intoxicating liquors.*—The legislature has power, in the exercise of the police powers of the State, to regulate the traffic in intoxicating liquors, and, when it determined that the traffic should be regulated by the establishment of dispensaries and conferred on municipalities the charter power to carry on dispensaries for the sale of intoxicating liquors, a town, in conducting such, exercises a governmental function, and the stock of liquors in the dispensary is not subject to levy and sale under execution against the town. And this, whether the dispensary is run for a profit or not.

APPEAL from the County Court of Cleburne.
Tried before the Hon. T. J. BURTON.
The facts in this case are fully set out in the opinion.

H. D. McCARTY and H. D. MERRILL, for appellant, cited.—Code, § 2040; *Mayor and Aldermen v. Rumsey,* 63 Ala. 352; *Murphree v. Mobile,* 104 Ala. 532; s. c., 108 Ala. 663; *Ellis v. Pratt City,* 111 Ala. 629.

BLACKWELL & AGEE, *contra,* cited.—*Shepherd v. Dowling,* 127 Ala. 1; *Aldermen v. Rumsey, supra; Ellis v. Pratt City, supra; Meriwether v. Garrett,* 102 U. S. 472; 42 L. R. A. 181; 20 A. & E. Enc. Law, 1190.

DENSON, J.—The Equitable Loan & Security Company recovered a judgment against the defendant, Town of Edwardsville, a municipal corporation, in the county court of Cleburne county, on the 18th day of October, 1900, in the sum of eight hundred, three and 43/100 dollars.

On the 1st day of April, 1902, an execution was issued on the judgment, and was, on the 31st day of July, 1902, levied on a stock of spirituous and malt liquors, as the property of the Town of Edwardsville.

On August 1st, 1902, the defendant filed a motion to vacate the levy made under the execution, upon the ground that the property levied on was property used by the defendant in its corporate capacity for municipal

purposes, in that said property was used in the conduct
of a dispensary under an act of the legislature, approved
February 18th, 1899. The act referred to is entitled, "An
Act to authorize municipal and other subdivisions of the
State to buy and sell spirituous, vinous or malt liquors,
and to further regulate or prohibit the sale of such
liquors," and is found in the general acts of the legisla-
ture, session 1898-99, at page 108.

It is alleged in the motion that the dispensary was
conducted and carried on at a profit for the purpose of
raising revenue, and the revenue arising from it was
used exclusively for municipal purposes, and that the
revenue so derived was necessary to pay the ordinary
municipal expenses of the defendant.

The plaintiff moved to strike the motion to vacate the
levy and also demurred to it, the motion and demurrer
were overruled, and the court rendered judgment in
favor of the defendant, vacating the levy.

The question now presented for our determination is
whether a stock of spirituous, vinous and malt liquors,
owned and used by a municipality as stock in trade in
conducting and carrying on a dispensary, is property
used for municipal purposes in such sense, as will, under
§ 2040 of the Code of 1896, exempt it from levy and sale
under execution issued on a judgment obtained against
the municipality.

"Municipal corporations are created for public, gov-
ernmental and political purposes and it is a corollary of
this proposition, that all property, of whatever nature,
held by them in trust 'for carrying out such purposes,
should be exempt from seizure and sale under execution."
Tiedman on Municipal Corporations, § 375, p. 765.

The doctrine as laid down by Mr. Dillon has been
approved by this Court, in the case of *Mayor and Alder-
men of Birmingham v. Rumsey & Co.*, 63 Ala. 352. Judge
Stone, in the case cited, uses this language, "We do not
hesitate to declare, that city property, owned or used
by the corporation for public purposes, such as public
buildings, public markets, hospitals, cemeteries, engine-
houses, fire engines and their apparatus, and other prop-
erty, real or personal, of kindred utility, cannot be taken
in execution for debts of the city. But, if the city owns

private property, not useful or used for corporate pur-
poses, such property may be seized and sold under final
process, precisely as similar property of individuals is
seized and sold."

In the second edition of the Am. & Eng. Ency. Law,
on page 1190, the law is thus stated: "So the property
of a municipal corporation which is essentially public in
its nature and is held in trust for the public by the cor-
poration, and is necessary for the exercise of its proper
municipal functions, cannot be sold to satisfy the debts
of the corporation. But the private property of a muni-
cipality, held for purposes of income or sale, unconnect-
ed with any governmental use or function, may be levied
on and sold to satisfy a judgment rendered against the
municipal corporation."

The act of the legislature above referred to, and under
which the dispensary was established and conducted by
the defendant in this case, has undergone judicial con-
struction by this Court, and was upheld.—*Sheppard v.
Dowling,* 127 Ala. 52.

In the case cited above, the Court held that, "A power
conferred upon a corporation by an independent and
original act, such as the power to buy and sell liquor
conferred by this act, is a power conferred by its char-
ter."

The dispensary act, referred to above and under which
the defendant was operating the dispensary, provides,
"That each incorporated town or city, in which the sale
of liquor is not prohibited by law, shall have authority
to conduct and carry on its corporate name, in its cor-
porate capacity, and through its legislative body, the
business of buying and selling spirituous, vinous and
malt liquors, subject to the restrictions hereinafter men-
tioned." The act further provides that the municipality
shall invest in said business a sum of money not less
than three hundred nor more than twenty-five hundred
dollars, for each dispensary it may carry on.

This Court held in the *Sheppard-Dowling* case, *supra,*
that it was entirely competent for the General Assembly
to authorize towns and counties to carry on the liquor
traffic as an incident to the regulation of that traffic pro-
vided by this act. Under the provisions of the act, the

defendant was not compelled or required to establish a dispensary, but was given authority to do so. When, in compliance with the provisions of the act, it did establish a dispensary, it did so in its corporate name, in its corporate capacity, and through its legislative body, and in that name, that capacity and through that body only, could the dispensary be legitimately conducted.

We have seen that, when the municipality established a dispensary, it had the power, and it was made its duty, by the law under which the dispensary was established, to provide the dispensary with a stock of liquors. A dispensary could not be conducted and carried on without the liquors, and when the liquors were purchased they could not have been held by the municipality for any other legitimate purpose than for the carrying on of a dispensary.

That the regulation of the sale of intoxicating liquors is within the police power of the State cannot be doubted, for it is established, if not literally by all the cases where the subject has been considered, certainly by an overwhelming array of authority, and the question has been put at rest by this Court.

Further, "It belongs to the legislative department in the exercise of the police powers of the State, to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety, subject to the power of the courts to adjudge whether any particular law is an invasion of rights secured by the Constitution."

We think it is well settled that the legislature in dealing with the sale of intoxicating liquors is fulfilling a public duty; that it is striving to promote the health, safety and morals of the community; that, in the establishment of the dispensary, it constitutes a public object, use, or purpose in the promotion of which public money may be lawfully invested and expended.

When the legislature determined that the traffic should be regulated by the establishment of dispensaries, and conferred on municipalities the charter power to carry on dispensaries for the sale of intoxicating liquors, and the dispensary was established by the town,

we think the town in carrying on the dispensary would
be in the exercise of a governmental function, the pri-
mary purpose of which should be, and would be, to so
regulate the sale and use of ardent spirits in the commu-
nity as to promote the health, safety, and morals of its
people. And certainly the public would be interested
in an instrumentality that in its operation would tend
to the accomplishment of such an object.—*Mitchell v.
State,* 134 Ala., on page 408.

We have seen that the liquors supplied by the town
to the dispensary were necessary for the carrying on
of the dispensary, and that the dispensary was a public
or municipal concern, a governmental function; it would
seem to follow therefore, that the stock of liquors would
be held in trust by the municipality for use in which the
public is concerned, its welfare promoted and the func-
tions of government discharged.

It seems to us, that, the power having been legiti-
mately conferred upon the municipality to carry on the
dispensary, and that it is an instrumentality in the ope-
ration of which the public is interested, to allow the
property necessary in carrying on the dispensary to be
subjected to levy and sale, might in many instances
thwart the purpose of the legislature in conferring the
power on municipalities to establish and carry on dis-
pensaries, and would deprive the public of the beneficent
results which were contemplated would flow from the
operation of dispensaries.

It is strenuously insisted in this case, by appellant,
that the dispensary was run for profit and a source of
revenue to the town, and that therefore it is not exempt
from levy and sale, and that the motion avers that the
dispensary was run at a profit and that it was put in the
treasury and constituted a part of the municipal rev-
enues.

We must not forget the purpose for which the dis-
pensary was established. The operation of a dispensary
may result in profit or loss according as it is discreetly
or unwisely managed. It seems that the legislature con-
templated that there might be profits, or losses, as the
dispenser is required by the act to make reports to the
legislative body of all profits and losses.

[McClendon v. McKissack.]

If in carrying on the dispensary there arose profits from the sale of the liquors, this would be a mere incident of the business engaged in, or a natural result from good business management. But it cannot be said to follow, that profits would withdraw from the property its true character and convert it into property held for purposes of income or sale disconnected from any corporate use or function.

Our conclusion is that the property levied on was used for municipal purposes, within the meaning of § 2040 of the Code, and that there is no error in the ruling of the court below prejudicial to the plaintiff. The county court properly granted the motion to vacate the levy.

The judgment of the county court is affirmed.

Affirmed.

McCLELLAN, C. J., HARALSON and DOWDELL, J.J., concurring.