(85 South. 839)

JONES v. STATE. (4 Div. 635.)

(Court of Appeals of Alabama. May 18, 1920.)

1. INTOXICATING LIQUORS ☞139—EVIDENCE HELD TO SHOW POSSESSION OF INTOXICATING LIQUORS.

In a prosecution for having intoxicating liquors in possession, an agreed statement of facts that the sheriff, on searching defendant's premises, found in his bedroom a half gallon of rum, held to show a direct violation of Acts 1919, p. 7, § 2, making it unlawful to have in possession certain prohibited liquors and beverages.

2. CONSTITUTIONAL LAW ☞81 — "POLICE POWER" DEFINED.

The "police power" of the state is that power which is necessary for its preservation and without which it cannot serve the purpose for which it was formed, and such power is properly exercised in preserving the health, morals, or safety of the public.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Police Power.]

3. INTOXICATING LIQUORS ☞6—PROHIBITION ACTS HELD WITHIN STATE POLICE POWER.

It is the accepted and declared policy of this state that whisky which may be used as a beverage is menace to the health and morals of the community, and the Legislature may therefore, under the police power, enact any law that will aid in stamping out drunkenness, or that will prevent evasions of the law as it affects the citizens in their relation one to another.

4. INTOXICATING LIQUORS ☞17 — STATUTE PROHIBITING POSSESSION HELD VALID.

Acts 1919, p. 7, § 2, prohibiting the possession of intoxicating liquors, is constitutional and valid.

Appeal from Circuit Court, Geneva County; H. A. Pearce, Judge.

Henry Jones was tried and convicted on a charge of having in his possession prohibited liquors, as defined by the prohibition laws of the state, and from his conviction he appeals. Affirmed.

W. O. Mulkey, of Geneva, for appellant.

The Legislature could not make it an offense for the defendant to have in his possession after a given date that which it was lawful for him to have prior to that date; in fact, Acts 1909, p. 1, did not repeal in this respect the Act of 1915, and, if it did, it was violative of the Bill of Rights. 164 Ala. 599, 51 South. 246, 26 L. R. A. (N. S.) 394; 133 Ky. 50, 117 S. W. 383, 19 Ann. Cas. 159, 24 L. R. A. (N. S.) 172; 163 Ky. 227, 173 S. W. 340, L. R. A. 1915D, 172; 134 La. 352, 64 South. 137, Ann. Cas. 1916A, 283; 2 Okl. Cr. 268, 101 Pac. 288; 33 W. Va. 146, 10 S. E. 283, 6 L. R. A. 847; 109 Ga. 373, 34 S. E. 590, 47 L. R. A. 366, 77 Am. St. Rep. 384; 61 Ill. 242; 27 Vt. 328; 6 Ind. 501; 71 Kan. 356, 80 Pac. 589, 6 Ann. Cas. 132.

J. Q. Smith, Atty. Gen., for the State.
No brief reached the Reporter.

SAMFORD, J. The following are the facts upon which the cause was tried:

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"It is agreed by and between the solicitor. and the attorney representing the defendant and the defendant in his own proper person that this cause be submitted to be tried by Hon. H. A. Pearce, judge, a jury being waived, and that the following are the facts, viz.: On the second Sunday in October, 1919, the sheriff of Geneva county, Ala., having in his possession a warrant to search the premises of Henry Jones, went to his residence in this county, and after making diligent search found sitting in the bedroom of the said defendant not exceeding one-half gallon of rum; that this was the only liquor or rum of any kind found by the sheriff on the premises. This liquor was found in the home of the said Henry Jones, and not elsewhere.

"It is further agreed that the said Henry Jones, the defendant, would testify that he had said liquor or rum for his own personal use and that he did not have it for sale or any other unlawful disposition and that he had never. sold any. It is agreed that there is no evidence in the case that shows the contrary."

[1] The facts show an act in the very teeth of section 2 of an act of the Legislature approved January 25, 1919 (Acts 1919, p. 6).

The duty and power of courts is to interpret and declare the law as it is, and not in accordance with the individual ideas of judges as to what it ought to be. Upon this principle rests the security of our liberties from judicial tyranny. Is it so written in the statute? Is the statute in conflict with constitutional inhibition? This is the end of inquiry. It is written in the statute as plainly as language can make it:

"That it shall be unlawful * * * to have in possession, or possess, in this state, any of said prohibited liquors and beverages." Acts 1919, p. 6, § 2.

This, to us, seems to leave no room for construction. It means what it says, and says what it means. This is emphasized when the exceptions named in the section are read in connection with the prohibition.

It may be admitted that unless the Legislature acted within the general police power in enacting section 2, then the enactment, in so far as it prohibits the possession of any quantity of liquor, must fail. In this connection, we are not unmindful of the well-established rule, sustained by the best authorities, that—

"It does not * * * follow that every statute enacted ostensibly for the promotion of these ends [i. e., the public morals] is to be accepted as a legitimate exertion of the police powers of the state. There are, of necessity, limits beyond which legislation cannot rightfully go. * * * If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205.

[2] The police power of the state is that power which is necessary for its preservation, and without which it cannot serve the purpose for which it was formed. Ex parte Rowe, 4 Ala. App. 254, 59 South. 69. This power is properly exercised in preserving the health, morals, or safety of the public. As to what means are appropriate or needful for this purpose, the Legislature primarily must determine, and its acts in this regard should not be overturned by the courts unless in clear contravention of the Constitution. Equitable Loan & Security Co. v. Edwardsville, 143 Ala. 182, 38 South. 1016, 111 Am. St. Rep. 34. The statutes of this state have now made the manufacture, sale, disposition, or possession of whisky a crime. The traffic has not only been condemned, but the product itself has been declared deleterious to health and morals, and is contraband and subject to seizure and destruction. In an attempt to stamp out the traffic in liquor, the Legislature has thought it necessary to enact stringent laws relative to its possession in order to prevent evasions of the laws passed for the protection of the health and morals of the state, as it affects the conduct of men in their relations to one another. 6 R. C. L. p. 189, § 188. The cases of Williams v. State, 179 Ala. 50, 60 South. 903, Eidge v. City, 164 Ala. 599, 51 South. 246, 26 L. R. A. (N. S.) 394, and French v. City of Birmingham, 165 Ala. 669, 51 South. 254, were decided at a time when it was not a violation of law to possess whisky in certain quantities, thereby presenting a different question from the one here considered. This difference is recognized in the case of West Virginia v. Gilman, 33 W. Va. 146, 10 S. E. 283, the principal authority cited in the Bessemer Case, 164 Ala. 599, 51 South. 246, 26 L. R. A. (N. S.) 394, where it is said:

"A very different question would be presented if the act had made it unlawful for any person to keep intoxicating liquors in his possession, either for himself or for another, for the purpose of selling it, or as a device to evade the revenue laws."

In the later case of Southern Express Co. v. Whittle, 194 Ala. 406, 424, 69 South. 652, L. R. A. 1916C, 278, the Supreme Court, speaking through McClellan, J., criticized and limited the opinions in Eidge v. City of Bessemer, 164 Ala. 599, 51 South. 246, 26 L. R. A. (N. S.) 394, and State v. Williams, 146 N. C. 618, 61 S. E. 61, 17 L. R. A. (N. S.) 299, 14 Ann. Cas. 562, and the quotations from Black on Intoxicating Liquors, sustaining the views expressed in the Eidge Case, were expressly stated not to be the rule in this state.

[3] The main purpose of all our statutes

embracing prohibition laws is to promote temperance and prevent drunkenness (Carl's Case, 87 Ala. 17, 6 South. 118, 4 L. R. A. 380), and it has now come to be the accepted and declared policy of this state that whisky which may be used as a beverage is a menace to the health and morals of the community. The Legislature may therefore, acting under and within the police power of the state, enact any law that will aid in stamping out the evil aimed at, or that will prevent evasions of the law as it affects the citizens in their relation the one to another. Soon Hing v. Crowley, 113 U. S. 703, 5 Sup. Ct. 730, 28 L. Ed. 1145; Noble State Bank v. Haskell, 219 U. S. 104, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487; Dees v. State, 16 Ala. App. 97, 75 South. 645.

[4] Section 2 of the act of the Legislature (Acts 1919, p. 6) is not in violation of the Constitution, and is therefore valid.

There is no error in the record, and the judgment is affirmed.

Affirmed.